Our first case of the afternoon, 415-0252, the State of Illinois v. Patricia Crist-Schmitt. Mr. Schmack for the appellant, Mr. Robbins for the appellee. You may proceed. Robbins Good afternoon. This is somewhat of a unique case to end up over here in that there doesn't appear to be any dispute as to the law or as to the facts. It's the application of the law to the facts that brings us here. My client was charged with an information on August 21, 2014. In October we had a preliminary hearing and by agreement the matter was set for trial in December of 2014. At the December 1st pre-trial we announced ready for trial and the people moved to continue citing an ongoing investigation and newly discovered information, although they weren't able to present to the court and didn't present to the court what the ongoing investigation was or any of the newly discovered information. We objected and they were allowed to file an amended information which was set for a preliminary hearing. Interestingly, as it turns out, at that time there were DVDs, Discovery, running from July through November that they had not turned over to us. It's our belief that the motion to amend was disingenuous and that it was done because they realized they hadn't turned over Discovery, but nevertheless that's our position and it is what it is. Again, over objection the matter was continued. They were allowed to file an amended information. It was basically the exact same charge as possession of cannabis or manufacture of cannabis. Let's cut to the chase. Vernacular, you got the run around, you think the prosecutor is, I don't want to call it prosecutor of misconduct because that phrase applies to other kinds of activities, but you think that there is either an animus towards your client or an ineptitude that they're trying to cover up. The question becomes, how do you appeal an interlocutory order of a null pros? At some point in time on the null pros, and I think we're all in agreement, that there's only a couple of situations that it can be done. That's if it's capricious or if it's vexatious or if it's with prejudice. In this matter, time and time and time again, there were Discovery violations. Let's take all that as true. What is the authority in Illinois? First of all, and just a conversation aside, we mentioned, Justice Turner mentioned, there's no statutory authority for a null pros. That's just language that's developed and there's case law that understands that when the state wants to dismiss the case, that's what we call it. But what statutory or Supreme Court rule authority is there for appealing a non-null pros, even though you objected to it and in your view, you had good grounds for objecting to it, but what makes it appealable? I think that's the case that we cited to the court, and I think in this situation, the actions were vexatious. They were capricious. It was a final and appealable order. I asked Judge Mays, I believe I understand that. But the fact of the matter is, the bond was discharged, charges were dismissed. The bond restrictions that would normally apply were all gone. My client was free to go. The case was over. Sixteen days later, they refiled the exact same charges. Their actions is in our position and our request to this court. I don't think can be or should be tolerated. They knew they couldn't get a continuance. They knew the trial court wouldn't give them a continuance. They had been to that well too many times. They announced ready for trial. Not only did they announce ready for trial, they said they didn't have any witness problems and they said there were going to be no motions in limine. Less than a week later, they come into court and they say we want to now process because of witness problems, and it turns out it wasn't a witness problem, it was another discovery violation. Counsel, can I ask you a question? You cited a couple of cases, Ferguson and then Swick, but those cases dealt with this in the context of a civil malicious prosecution context. I mean, isn't the question before us clearly settled by the Woolsey position? I think so. I think this is obviously a unique situation. This doesn't happen a lot, but in this situation it happened way, way, way too much. Whether you do this under the denial or the granting of the null process, or whether you do this as a result of the discovery violations, I don't believe, and I would suggest to you, that this type of ongoing conduct, as you mentioned, should not and cannot be tolerated. There is no remedy for it. If you give them a continuance, they got what they wanted. They violate discovery, ah, no big deal. This is one of these situations, I think, where you have it in your authority to stop this, to stop the game plan. When you come into court and you announce ready for trial and you know you're not, there's a problem. I understand your frustration. Thank you. And they're very clear and, you know, legitimate it sounds like, but how do we go against Illinois Supreme Court law that states that there is no right to appeal at this juncture because it's interlocutory? I mean, how do we distinguish it from Woolsey? I think when you look at what happened to my client, bonds discharge, you know what I'm talking about. It was over. It was over. She had no other remedy. No other remedy. And whether, again, this is a discovery violation or it's an abusive process for allowing the null process, it's got to be stopped. This is the place to do it. This is the case for it. I don't like coming here as much as you don't like having more cases of this nature. But at some point in time, somebody's got to stand up and say enough is enough. You can't keep playing games with people's lives over and over again, again, as it's pointed out. And I realize it is somewhat significant. But when you have a young doctor of veterinary medicine trying to establish a practice in a small community and it's getting this type of publicity and all of the things that happened, somebody's got to step up to the plate and say we're not going to tolerate this anymore. I am hopeful that that's what you will do. I don't want to take up any more of your time. I'll be happy to answer all your questions. We're obviously all on board with this. The question is, what's the remedy? I suggest and I ask that you find that this was too much. I ask and suggest that you send it back with directions for a dismissal. Because there's nothing else to do. I guess maybe we can come back on an equal protection or a due process argument. But then that requires a whole new trial and all the new expenses and all the publicity and all the prejudice that's going to result to my client. And maybe we win or maybe we don't. Maybe the worst thing that could happen as far as the law is concerned is that we would win that trial and this issue wouldn't be brought up and it keeps going on and on and on again. And I think this is an opportunity, as we're all aware, there isn't any case law. There's very little case law out there on this. I think this is a perfect case to say enough is enough. Discovery violations are serious. They can't all be cured with continuances. And at times it's going to happen if you step over the line too much. That's my hope. That's my request. And if you have any questions, I'll be happy to answer them. No questions. Thank you. We'll hear from you on rebuttal. Thank you. Please report. Justice Connick asks, how do you appeal in this case? It's interlocutory in nature. Let me read you a quote from People v. Woosley. Defendant argues that an order dismissing criminal charges through a nollie pros is a final judgment for purposes of appellate review because it is a judgment which terminates the prosecution at this point. That's precisely what the defendant argues in this case. The holding from Woosley states as follows. The order granting the state's motion for nollie pros was an interlocutory rather than final order. No appeal lies from an interlocutory order in the absence of a statute or rule specifically authorizing such review. This court does not have jurisdiction to review this claim. The defendant's underlying claim is that somehow there were some shenanigans related to speedy trial or discovery issues. That is an issue for supervisory authority that, as this court well knows, only the Supreme Court retains. The only thing that I would add is I feel compelled to defend the state's attorney's office in this case to the extent it's necessary. When you review the record in this case, record from the March 10 hearing, 153, 162, and 166, in the defendant's challenge to the state's motion to nollie this case, the court concluded and accepted the state's assertion that one of its key witnesses was unavailable, and that's the reason they denied it. And that's the stated reason for the delay. Reading the record and speaking to the state's attorney's office, essentially what the defendant's claim here, the substantive claim below, is that not that the state's attorney's office was necessarily involved in any shenanigans, but the accusation is that law enforcement generally is involved in some sort of shenanigans. So, in other words, they're taking information, creating police reports, and holding those until a later date, then turning them over to the state's attorney's office, and within three days, and I think Mr. Schnack himself explained at the hearing, look, we don't have any beef with the state's attorney's office. They're turning it over in three days. That amounts to essentially nothing for purposes of discovery. The state's attorney's office, we pushed back on that and said, well, wait a second. You actually have to look at the dates when these documents were prepared. So, clearly there's no jurisdiction here. This court, unfortunately, doesn't have supervisory authority like the Supreme Court does to address that underlying issue, but even if it did, this court, our position is that you could certainly affirm based on what was presented to the trial court, and it's different from Woosley in the fact that in Woosley, the trial court did not conduct a hearing, whereas here they did, and the trial court determined that the rationale outlined by the state's attorney's office did not amount to something that was vexatious or problematic. I want to make sure that I understand, so I'll ask the question in this way. In your further discussions with the state's attorney of Adams County, this is Adams, isn't it? Correct, Your Honor. Adams County. Would you point out to that attorney that this is not a very good way to go forward, and if there's a problem with them going forward in an appropriate way, they need to discuss with law enforcement what apparently is going on, whether it's called a shenanigan, or it's called sloppy practice, or if there is a vexatious vendetta aspect to it, whatever the reasons, that needs to be resolved for the future. That doesn't give Mr. Schnock any solace, but I'm asking you as an official of the court, and as someone who has a relationship with state's attorneys, would you have a discussion with them about this? I will. Perhaps have you already? I will, absolutely, and there is a previous case where there was this allegation made, and the trial court dismissed it with prejudice. This is a case that, in fact, Mr. Schnock brought up at the hearing. My point in pointing that out to this court is that the trial court is well aware of what the allegations are in this county and what the potential problems are. All of that was before the judge, and this is what the trial judge said in denying the defendant's motion to, essentially, block the nollie cross. I've read the motion, the objection, actually the information attached to the reading regarding the discretion of the prosecutor. While obviously there's issues with this case, and sometimes a case ends up having a multitude of issues, I don't think at this point that the prosecution has done anything as far to lose their right to nollie cross the case. The motion for nollie cross will be granted. I believe, Mr. Schnack, you may have a due process argument when they refile it, but obviously you're going to have to file that and proceed with that at that point. So the trial judge here is aware of what's going on. I know that the prosecutors are aware of the issues, but the other important thing here, and it's sort of collateral to the ultimate outcome in this case, but just to assuage any concerns for the court, defendant repeatedly states in the statement of facts section of his brief in this case that this discovery violation occurred, that discovery violation occurred, this discovery violation occurred. Those are legal conclusions. There were no such findings made in this case. So the judge is aware of what's going on. When this case moves forward, I don't think that any of the parties, certainly Mr. Schnack understands the law in this regard, and he will be able to bring it to the court's attention. In the for what it's worth category, Your Honor, I will most certainly be discussing this case when I return to the office and then once this disposition is issued so that we're all on the same page. And if there's nothing else. Thank you. Mr. Schnack, rebuttal. Just very briefly. Counsel is correct. I was involved in the case that basically led to us being here, and that was a dismissal by the trial court judge on the morning of trial with prejudice for discovery violations. That obviously is the ultimate sanction, but that hasn't stopped anything. The problems continue, and the only reason that way these problems are going to continue, and I did say that, I do not blame the state's attorney's office per se. I know what the law enforcement is doing, and it's obvious from this case. They're sitting on the discovery and giving it to the state at the last minute because they know they don't have to turn it over to the defense counsel. They're cherry-picking discovery, and that's got to stop, and the only way to stop it is to quit the game thing and to stop the game playing. I'm too old for this. I don't need this anymore. My clients don't need it anymore. If you would send this back with a direction, I would hope that it would stop it and I wouldn't have to come back here. I wasn't here. It was someone else, but I don't have to come back with this issue a third time. Thank you. Thank you, counsel. We'll take the matter under advisement and wait for the readiness of the next case.